IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

**PENNIE ROSS,**

    Plaintiff,

vs.

**FLUID ROUTING SOLUTIONS, INC.,**

    Defendant.

Case No. _____
JURY DEMANDED

## COMPLAINT

COMES NOW the Plaintiff, Pennie Ross, (hereafter, the "Plaintiff"), and states unto this Honorable Court as follows for her Complaint against the Defendant, Fluid Routing Solutions, Inc. (hereafter, the "Defendant"):

### I.  PRELIMINARY STATEMENT

1. Plaintiff has sued the Defendant for violations under the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq.* ("THRA"). These claims are based on the ongoing gender discrimination Plaintiff experienced while employed with Defendant as related to her replacement by a male upon her termination, and the ongoing retaliation she experienced after complaining about females being paid less and promoted less frequently than their equivalent male counterparts.  In her position as Human Resources Manager, Plaintiff also witnessed and complained against racial discrimination against

certain African-American employees and discrimination against another employee based on disability.

2. Plaintiff has further sued the Defendant for violations of the Tennessee Public Protection Act, pursuant to Tennessee Code Annotated § 50-1-304. The Tennessee Public Protection Act, ("TPPA"), commonly known as the "whistleblower" statute, provides a cause of action for employees, including state workers, who are terminated "solely for refusing to participate in, or for refusing to remain silent about, illegal activities." *Tenn. Code Ann.* § 50-1-304(b). Plaintiff has complained on numerous occasions about discrimination and retaliation based on gender, race, disability, workers' compensation, and/or exercise of rights under the Family Medical Leave Act.

3. Plaintiff also sued Defendant for retaliatory discharge under the common law of the State of Tennessee.

## II.   PARTIES, JURISDICTION, AND VENUE

4. Plaintiff Pennie Ross is an adult citizen and resident of Henderson County, Tennessee, whose principal address is 840 Arms Creek Road, Darden, Tennessee 38328.

5. Defendant Fluid Routing Solutions, Inc., is a Delaware corporation authorized to conduct business in the State of Tennessee, with a principal address of 6065 Parkland Boulevard, Cleveland, Ohio 44124-6119. Fluid Routing Solutions, Inc. has a manufacturing facility located at 1921 North Broad Street, Lexington, TN 38351. Its registered agent for service of process is Corporation Service Company, 2908 Poston Ave, Nashville, TN 37203-1312.

6. With the passage of the Tennessee Human Rights Act, the state of Tennessee provided for execution of the policies in the federal Civil Rights Act of 1964, 1968, and 1972.

*Tenn. Code Ann.* § 4-21-101(a)(1). The THRA also declares it a discriminatory practice to "retaliate or discriminate in any manner against a person because such person opposed a practice declared discriminatory by this chapter or because such person has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this Chapter." Tenn. Code Ann. § 4-21-301. Its purpose is to safeguard "all individuals," including the Plaintiff in this action, from employment discrimination based upon race. Tenn. Code Ann. 4-21-101(3). It protects her "personal dignity," affords her "freedom from humiliation," and protects her "health and general welfare," her "interests, opportunities, and privileges" in this state. *Tenn. Code Ann.* § 4-21-101(4), (7), and (8). Subject matter jurisdiction over THRA claims is proper in this Court based on diversity.

7. Pursuant to 28 U.S.C. § 1332(a)(1), this Court has "original Jurisdiction in all civil actions where the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest or costs," between citizens of different states. 28 U.S.C. § 1332(a)(1). Complete diversity exists as the Plaintiff is a Tennessee citizen and the Defendant is a Delaware corporation with its principal office in Cleveland, Ohio. More than $75,000 is in controversy in this case exceeding the amount in controversy requirement. *See* 28 U.S.C. § 1332(a).

8. Venue is proper in the Western District of Tennessee under 28 U.S.C. §1391(b)-(c) because Defendant employed Plaintiff in this district, it conducts business in this district, and the cause of action accrued in this district.

### III.     FACTS

9. Plaintiff is a former employee of Defendant, having been employed by Defendant from 1988, until Defendant terminated Plaintiff's employment on or about June 1, 2012.

10. Plaintiff is female.

11. Plaintiff worked as Human Resource Manager from 2004 until the time of her termination, at which time, her position was filled by a male.

12. Plaintiff was terminated from her job with Defendant after she opposed instructions to commit illegal acts and after she refused to participate in these same illegalities. Because of Plaintiff's strong ethical convictions, she was unwilling to violate the laws she was bound to uphold as the Human Resources Manager.  She not only expressed this unwillingness to her superiors and informed them of the illegality of their requests; she then proceeded to perform her job in compliance with the law.  She refused to remain silent and voiced her complaints when discrimination or retaliation became apparent.

13. During her employment, Plaintiff opposed the rehiring of a male manager who had verbally assaulted and harassed females prior to his termination.  This male manager had signed a severance agreement, and company policy prohibited the rehiring of anyone under these agreements.  However, in contrast, all similarly situated females who signed severance agreements after lay-offs and who re-applied for employment have been denied employment based on the same policy.  Plaintiff complained to Defendant that no females under severance agreements were ever allowed to be rehired but that males were given preferential treatment in violation of the policy.

14. After the rehiring of the male harasser, Plaintiff made the conscious decision to rehire a similarly situated female worker who had been laid off due to lack of work. This female worker had signed the same type of severance agreement that the male harasser had signed, but, Defendant invoked company policy and claimed that she could not be rehired. Because this female had been a good worker during her previous employment period, Plaintiff routed the female through the temporary employment agency process to get her back on full-time with Defendant. Plaintiff refused to allow Defendant to discriminate against this woman and found a means by which the female could be rehired.

15. During a certain lay-off process at Defendant's Lexington plant, Plaintiff complained that allowing laid off male employees to take different jobs at the plant when the same opportunity was not extended to laid off female employees was discriminatory.

16. Plaintiff was instructed not to post a vacant position because an African-American female with a workers' comp history would be the one to automatically qualify for the job under company policy. Plaintiff posted the job anyway and explained that it was discriminatory not to give the well-qualified African-American female the position.

17. Plaintiff has continually complained that a certain African-American employee has been discriminated against by Defendant because of his race. Plaintiff has stated that this supervisor receives less pay than his equivalent white counterparts. Plaintiff also opposed a previous lay-off of this same gentleman when there were employees with documented poor performance who should have been selected for lay-off. And, even before the African-American was moved into the supervisory position, Defendant had

opposed the posting of the supervisory job because it knew that the African-American had the credentials to be awarded the job. Although she was instructed not to post the job, Plaintiff ignored the instruction, allowing the African-American to rightly be awarded the position.

18. Plaintiff also spoke out against the termination of another African-American male who was disfavored because of his race and because of workers' compensation injuries. Although Defendant claims that the African-American was terminated for forgetting to clock out, white employees without workers' compensation claims have not received such harsh punishment. And, it is widely known that one white employee routinely clocks herself in and out via the remote on her home computer and has not even received a write-up.

19. Women at Defendant's Lexington location are routinely paid less than their equivalent male counterparts. The quality auditor makes approximately $2.00 less per hour than a male at her same level. Plaintiff complained to Defendant many times of this discrimination and even attempted to adjust the classification levels to remedy the situation.

20. Defendant instructed Plaintiff to discriminate in pay between two customer service representatives – one male and one female. Plaintiff refused to raise the male to a salary level higher than the female when the two were performing the same job.

21. The female quality engineer at Defendant's Lexington location makes less than her male counterparts at the same pay grade and so does the logistics manager.

22. Plaintiff has made many efforts to correct these pay discrepancies and has routinely pointed out to Defendant that it is illegal to pay women less than the men working at the same pay grade.

23. Plaintiff has also spoken out against discrimination due to a person's disability. A female quality engineer is a diabetic with retinal issues that require accommodation such as the large screen at her workstation. Defendant decided that it wanted an engineer without disabilities and then designed a plan to cut her status and pay and then eventually fire her. Plaintiff complained to Defendant that this was not only illegal, it was unethical. She emphasized that disabled people who are able to perform their jobs with reasonable accommodations cannot be terminated. Because of Plaintiff's complaints, Defendant had to drop its plans.

24. Several women have been demoted or terminated and in each case the women were replaced by a male. These women include: the controller, the focus factory manager, the quality manager, and Plaintiff, the Human Resources Manager.

25. When a seriously ill employee requested FMLA leave, Plaintiff was told to obstruct the process as Defendant wanted to terminate the employee instead. Plaintiff contacted the Department of Labor to provide Defendant with guidance as to what was required under the circumstances. However, Defendant refused to heed to advice Plaintiff relayed. Defendant's position was that people missed too much work because of FMLA leave. Defendant terminated the employee and denied her FMLA leave. Plaintiff, knowing the violations that had been committed, explained to the employee how she could still apply for her FMLA leave.

26. Plaintiff also complained of FMLA retaliation when employees who had taken leave were later denied promotions because they had exercised rights under FMLA. Plaintiff also rightfully included these employees in the bid processes for promotions, even though she had been instructed against this.

27. Defendant terminated Plaintiff and replaced her with a male following her termination.

28. Based upon the foregoing, Plaintiff has experienced humiliation, degradation, embarrassment, loss of income, mental anguish, and other damages.

### IV.   CAUSES OF ACTION

29. The foregoing facts are incorporated by reference as if set forth fully herein.

30. The Plaintiff brings the following causes of action against the Defendant:

    a. Plaintiff has sued the Defendant for violations of the Tennessee Public Protection Act, pursuant to Tennessee Code Annotated § 50-1-304, based on retaliation for speaking out against illegal activity by the Defendant. Tennessee Code Annotated § 50-1-304 provides that "No employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." *Tenn. Code Ann.* § 50-1-304(a). The statute provides a cause of action "against the employer," for such discharges pursuant to *Tenn. Code Ann.* § 50-1-304(d), and defines "employer" as a "private employer." *Tenn. Code Ann.* § 50-1-304(g)(2).

    b. Plaintiff has sued the Defendant for retaliatory discharge at common law for her exercise of protected rights and compliance with clear public policy, including gender and race discrimination; violation of the Americans with Disabilities Act for

8

reporting discrimination based on disability; and for violation of the Family Medical Leave Act, for retaliation for her reporting discrimination based on FMLA.

c. Plaintiff has sued the Defendant for violation of the Tennessee Human Rights Act, T.C.A. § 4-21-101 *et seq.* for discriminatory treatment based on gender and for retaliation for opposing discrimination based on gender, race, and disability.

## V.   DAMAGES

31. Plaintiff has been greatly damaged as a result of the Defendant's actions.  She has suffered, and will continue to suffer, damage including, but not limited to, loss of her professional and personal reputation, loss of income, loss of business opportunity, emotional damage and mental distress.

32. Plaintiff seeks all compensatory damages, including lost wages, lost earning capacity, emotional distress, and embarrassment.  She also seeks her attorney fees, costs, and both prejudgment and post-judgment interest and any other damages as allowed under the TPPA, the THRA, and common law.

## VI.   PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff prays:

A. That proper process issue and be served upon the Defendant, and that Defendant be required to appear and answer this Complaint within the time required by law.

B. That a jury be empanelled to hear Plaintiff's claims against Defendant.

C. That Plaintiff be awarded a judgment against Defendant in an amount not to exceed $1,000,000.00

D. That the Plaintiff be awarded her attorney fees, costs, both prejudgment and post-judgment interest, and any other damages allowed under the Tennessee Human Rights Act, the Tennessee Public Protection Act, and common law.

E. Such further and other general relief to which Plaintiff may be entitled.

Respectfully submitted,

SPRAGINS, BARNETT & COBB, PLC

/s/ Teresa A. Luna
TERESA A. LUNA #26447
Attorneys for Plaintiff
P.O. Box 2004, 312 E. Lafayette Street
Jackson, TN 38302
(731) 424-0461
(731) 424-0562 (Telefax)
tluna@spraginslaw.com